**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM<br>MDL 3176** |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>  Plaintiffs,<br><br>v.<br><br>AR-TT, LLC d/b/a TAKEDOWN TOOLS; CLAUSEN INC.; JONATHAN CLAUSEN, and JODI CLAUSEN<br><br>  Defendants. | Civil Action No. 4:26-cv-00693-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>  Plaintiffs,<br><br>v.<br><br>CANUCK TACTICAL LLC, d/b/a RANGESPORT AMERICA LLC,<br><br>  Defendants. | Civil Action No. 4:26-cv-00705-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>  Plaintiffs,<br><br>v.<br><br>CLOAK INDUSTRIES, INC. and WILLIAM C. KING JR**.,**<br><br>  Defendants. | Civil Action No. 4:26-cv-00608-ALM |

| | |
|---|---|
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., | Civil Action No. 4:26-cv-00377-ALM |
| Plaintiffs, | |
| v. | |
| DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW, | |
| Defendants. | |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., | Civil Action No. 4:26-cv-00707-ALM |
| Plaintiffs, | |
| v. | |
| HAWKPHIN SALES, LLC, d/b/a BATTLEHAWK ARMORY/ BATTLE OPTICS/ BATTLE SHOP/ BATTLE SHOPS/ LAKEFRONT ARMORY, and ADAM GERLEMAN, | |
| Defendants. | |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., | Civil Action No. 4:26-cv-00695-ALM |
| Plaintiffs, | |
| v. | |
| FIREARM SYSTEMS LLC d/b/a FIREARM SYSTEMS, BRANDON DONATTO, and MICHAEL STAKES, | |
| Defendants. | |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., | Civil Action No. 4:26-cv-00521-ALM |
| Plaintiffs, | ` |

v.

OPTICS PLANET, INC., d/b/a ECENTRIA,

     Defendant.

---

ABC IP, LLC, AND RARE BREED TRIGGERS, INC.,

     Plaintiffs,

v.

PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS and NICHOLAS NORTON,

     Defendants.

Civil Action No. 4:26-cv-00698-ALM

---

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

     Plaintiffs,

v.

SGC, LLC d/b/a SCOTTSDALE GUN CLUB, TERENCE D. SCHMIDT, and RONALD KENNEDY,

     Defendants.

Civil Action No. 4:26-cv-00694-ALM

---

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

     Plaintiffs,

v.

TGR SERVICES, LLC, d/b/a MISSION RIDGE LLC & MISSION RIDGE RANGE & ACADEMY LLC, f/k/a TEXAS GUN RANGE OPERATORS LLC, and TGR VENTURES, LP,

     Defendants.

Civil Action No. 4:26-cv-00680-ALM

| | |
|---|---|
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WEBCORP. INC. d/b/a TACTICAL SHIT/ LIBERAL TEARS/SIGGLOCKINCOLT.COM,and THOMAS KIRGIN, JR., <br><br> Defendants. | Civil Action No. 4:26-cv-00768-ALM |

**DECLARATION OF DR. JOSHUA HARRISON, PH.D, IN SUPPORT OF ABC IP, LLC, AND RARE BREED TRIGGERS, INC.'S REPLY IN SUPPORT OF SECOND <u>CONSOLIDATED MOTION FOR PRELIMINARY INJUNCTION</u>**

I, Joshua Harrison, declare and state as follows:

**I.      QUALIFICATIONS AND ASSIGNMENT**

1.      I am over eighteen years of age and am competent to make this declaration. I have personal knowledge of the matters stated herein, except where stated on information and belief, and if called as a witness I could and would testify competently to them. I submit this declaration in support of Plaintiffs' Reply in Support of their Omnibus Motion for Preliminary Injunction.

2.      My firearms training and education includes 23 years of service in the reserve forces of the United States military, from which I was honorably discharged. That military training and experience includes service as an enlisted member of the United States Marine Corps light infantry, and as a commissioned officer in the United States Army Reserve. Throughout my military service I received periodic training and achieved proficiency with various weapons, including pistols, rifles, grenades, machine guns, mortars, artillery, supporting systems, and their safe handling and effective tactical employment. The primary duty rifles that I trained with and used throughout my military service pertained to the AR rifle subclass of semiautomatic firearms.

3.      I have more than 40 years of experience as a firearms user, owner, hobbyist, and enthusiast, during which time I routinely practiced the effective and safe operation, assembly, disassembly, and proper maintenance of a wide variety of firearms, firearms components, and accessories, and I have substantial experience as a successful competitor in shooting sports, such as in competitions sanctioned by the Practical Shooting Association of America. I am also a California licensed hunter, and have been continuously licensed to carry a concealed handgun in the State of California since 2014.

1

4.       I am presently certified by the National Rifle Association as a pistol instructor and as a range safety officer. I was formerly certified by the California Dept. of Justice as a firearms safety instructor. I am also a certified Glock pistol armorer.

5.       I earned the Bachelor of Science degree in mechanical engineering from the University of Southern California, graduating in 1987. I earned the Master of Science and Ph.D. degrees in mechanical engineering from the University of California, San Diego, graduating in 1989 and 1992, respectively.

6.       I worked as a professional mechanical engineer in industry, including salaried full-time engineering employment at IBM Corporation, Applied Magnetics Corporation, and Seagate Technology, Inc. Those companies manufactured millions of disk drive information storage devices, and my engineering contributions were made in consideration of their practical and profitable manufacturability using the manufacturing tools and processes available at the manufacturing facilities operated by those companies.

7.       My professional engineering experience also includes full-time employment as a tenurable lecturer of mechanical engineering at the Dept. of Mechanical Engineering of the University of Queensland (an academic staff rank in Australia equivalent to Assistant Professor in the USA). There I lectured on mechanical engineering subjects, supervised postgraduate students and research, and upgraded existing laboratory facilities. I taught Mechanical Engineering courses in Engineering Dynamics, Applied Dynamics, and Elements of Machines. In connection with my work as an engineering professional, I have authored more than twenty peer-reviewed scientific publications in engineering journals or conference proceedings, and have been named as an inventor on more than ten U.S. patents.

2

8. I am or have been a member of several industry and professional organizations, including the Institution of Engineers in Australia and the American Society of Mechanical Engineers.

9. I earned the Juris Doctor degree in law from Stanford Law School in 2002, and was thereafter admitted to practice before the United States Patent & Trademark Office as a patent attorney. Throughout my 20 years of experience as a practicing patent attorney, I have routinely worked with mechanical and manufacturing engineers and other technical inventors to understand new or accused technologies and inventive mechanical devices, how those work, and how their new engineering advancements differ from the existing technical state of the art.

10. I have been retained by Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc. ("Plaintiffs") in connection with this matter. I am compensated at my ordinary hourly rate. My compensation does not depend on the outcome of this matter or on the substance of my opinions.

11. In forming the opinions below, I reviewed the '403 Patent and its file history; the four previously-asserted patents including their claims and file histories; the prior art cited by Peak; Plaintiffs' motion for temporary restraining order and preliminary injunction filed in the Wyoming case; Peak's opposition to that motion; the Wyoming court's February 13, 2026 order; and the briefs and pertinent exhibits filed in support of and in opposition to the present motion.

## II.    METHODOLOGY

12. I was asked to evaluate whether the invalidity analysis directed at the previously-asserted claims in the Wyoming proceeding is the same analysis that would apply to the asserted claims of the '403 Patent. My analysis proceeded from a basic principle: anticipation and obviousness under 35 U.S.C. §§ 102 and 103 are assessed one claim at a time, by comparing the specific limitations of the particular claim asserted against the prior art. Consistent with that

3

principle, I undertook to determine (a) whether the asserted claims of the '403 Patent recite the same limitations as the previously-asserted claims, and (b) whether any claim-specific invalidity analysis of the asserted claims exists in this record.

13.     To make those determinations, I took the following steps. First, I reviewed each of the asserted claims of the '403 Patent (claims 14, 15, 17, 29, 30, 32, 38, and 39) and each of the previously-asserted claims (claim 4 of the '223 Patent, claim 4 of the '003 Patent, claim 3 of the '336 Patent, and claim 1 of the '807 Patent), and I separated each claim into its constituent limitations. Second, I compared the asserted claims to the previously-asserted claims, limitation by limitation, identifying any limitations and claim terminology recited in the asserted claims that do not appear in the previously-asserted claims, as well as limitations that the asserted claims recite differently or do not recite at all. Third, I reviewed the file history of the '403 Patent to determine what prior art and materials were considered by the Examiner and the basis on which the asserted claims were allowed, and also the file histories of the '223 Patent, '003 Patent, and '807 Patent to further inform my understanding of the scope and meaning of the terms used in their respective claims. Fourth, I reviewed Defendants' opposition, the Nixon declaration, and the Wyoming court's order to determine whether anyone had applied the US Patent 9,146,067 to Stakes (the '067 Patent), "TacCon 3MR Trigger" (https://www.shootingillustrated.com/content/taccon-3mr-trigger/) Shooting Illustrated, May 15, 2015, or any other prior art reference to the limitations of the asserted claims of the '403 Patent.  In reading the claims, I relied on my engineering background and experience with firearm trigger mechanisms to understand the terms the claims use.

4

### III.    PROSECUTION HISTORY OF THE '403 PATENT

14.    The '403 Patent issued on May 26, 2026. The only rejection entered during prosecution was a non-statutory obviousness-type double patenting rejection of then-pending claims 1-32 over the '807, '336, and '003 Patents, which was resolved by a terminal disclaimer. Claims 33-55 of the '403 Patent, including asserted claims 38 and 39, though having a term affected by the terminal disclaimer, were never rejected for double patenting or on any other basis. A terminal disclaimer limits patent term (that is, length of the patent right of exclusivity); it does not alter, merge, or concede claim scope.

15.    In my experience, including my years of practice before the Patent Office, an obviousness-type double patenting rejection concerns whether pending claims are patentably distinct from earlier claims of the same family, and is commonly resolved by a terminal disclaimer rather than by the detailed, claim-by-claim comparison of the claims to the prior art that an anticipation or obviousness determination requires. That is how the rejection was resolved here, and the rejection accordingly did not involve any application of the prior art to the limitations of the asserted '403 claims.

16.    Moreover, all of the prior art and materials at issue in the Wyoming proceeding were before the Examiner during prosecution of the '403 Patent. These included the '067 Patent prior art; the TacCon 3MR prior art; US Patent No. 659,507 to Browning, US Patent 2,367,280 to Hyde, US Patents 2,056,975 and 2,139,691 to Michal, and US Patent No. 9,829,263 to Bonner, on which Defendants relied in Wyoming. The asserted claims were allowed over that record and no prior-art rejection was ever entered for any claim of the '403 Patent.

5

## IV.    COMPARISON OF THE ASSERTED '403 CLAIMS TO THE PREVIOUSLY-ASSERTED CLAIMS

17.    To evaluate sameness or differences in claim scope, I compared, element by element, the asserted claims of the '403 Patent (claims 14, 15, 17, 29, 30, 32, 38, and 39) to the four previously-asserted claims (claim 4 of the '223 Patent, claim 4 of the '003 Patent, claim 3 of the '336 Patent, and claim 1 of the '807 Patent).

18.    My comparison shows that the asserted claims of the '403 Patent and the previously-asserted claims do not have the same language, and are different in scope.

19.    Specifically, the asserted '403 Patent claims recite limitations and use claim terminology that do not appear in any of the previously-asserted claims. For example, the requirement of claim 30 that the safety selector be "separate from the locking member"; the requirement of claims 17 and 32 that the locking member be "moved into the block position during rearward motion" of the cyclic semi-automatic action; and the requirement of claim 39 that, in the forced reset semi-automatic position, the trigger member be "forced to move to a full reset position."

20.    Conversely, the previously-asserted claims recite limitations that the asserted '403 Patent claims recite differently or do not recite at all.  For example, each previously-asserted claim recites a spring-biased locking bar or locking member, and each previously-asserted claim that recites a safety selector recites one movable among three positions, including a "safe" position; no asserted '403 Patent claim recites a spring bias or a "safe" selector position.

21.    Some additional, exemplary differences in claim language and/or scope are identified in the following table.

6

| Asserted '403 claims | Previously-asserted claims |
|---|---|
| "bolt means" (cl. 14); "cyclic semi-automatic action" (cls. 17, 32); "cycling of a firearm action" / hammer pivoting (cls. 38, 39) | "bolt carrier" (all four) |
| no "housing" and no "fire control mechanism pocket" recited (cls. 14, 17, 32, 38, 39) | "housing" with pin openings ('223, '003, '336); "fire control mechanism pocket" ('807) |
| "locking member," not spring-biased (cls. 14, 17, 32); no locking element recited (cls. 38, 39) | spring-biased "locking bar" ('223) or "locking member" ('003, '336, '807) |
| no selector switch recited (cl. 14); two-position, "at least standard … and forced reset" (cls. 15, 29, 30, 32, 38, 39); cl. 30 adds "separate from the locking member" | no selector switch recited in claims ('223); three-position "safe, standard semi-automatic, and forced reset" ('003, '336, '807) |
| separate "transverse disconnector pivot axis" (cls. 14, 38, 39); disconnector recited without a pivot axis (cl. 17); "a disconnector," no hook or pivot (cl. 32) | no disconnector recited in claims ('223); disconnector pivots "on said trigger member pin" ('003, '336, '807) |
| hammer hook recited as "past the disconnector hook" (cls. 38, 39) | "disconnector hook catches said hammer hook" ('003, '336, '807); no such recitation ('223) |
| "a substantially in-battery position or an in-battery position" (cls. 14, 17, 32); term not used (cls. 38, 39) | "substantially in-battery position" (all four) |
| hammer hook recited (cls. 14, 17, 38, 39); sear notch not recited (any claim) | "sear notch" recited ('223); no hammer hook recited ('223) |

## V.    NO CLAIM-SPECIFIC INVALIDITY ANALYSIS OF THE ASSERTED CLAIMS EXISTS

22.    I am not aware of the asserted claims of the '403 Patent having been construed, analyzed, or adjudicated by any court, or presented in any prior proceeding; and, as is well known, its issued claims are otherwise presumed valid.

23.    For example, Defendants' opposition contains no element-by-element mapping of the '067 Patent, the TacCon 3MR, or any other reference onto any asserted claim of the '403 Patent. I am aware of no such mapping—by any expert, by counsel, or by any court.

7

24. Also, the Wyoming court's "substantial question" finding addressed different claims of different patents, on an expressly preliminary record. The court did not describe that record as complete, and it stated that its findings did not constitute a determination on the merits. The invention(s) described in the specification can be characterized (that is, claimed) in different ways and in different combinations of elements. The fact that the claims in different patents are based on the same specification does not mean the claims have the same scope.

## VI. CONCLUSION AND OPINIONS

25. Because no analysis identifies which limitation of which asserted '403 claim is allegedly disclosed by which reference, the assumption that an invalidity showing against the previously-asserted claims "applies with equal force" to the asserted claims (*see* Defendants' Opposition, Doc. 86, at p.9 and p.13) is unsupported by any claim-specific comparison. Hence, and in view of the differences in claim scope that I identify herein, I would not make the foregoing assumption, nor would I consider it to be reasonable to follow such an assumption without first seeing and testing an analysis of validity that is specific to the different language and scope of the asserted '403 patent claims.

26. I reserve the right to supplement, amend, or modify the opinions expressed in this declaration based on additional information, discovery, claim construction proceedings, testing, or analysis that may become available, including but not limited to additional documents, deposition testimony, expert reports, or court rulings.

Under penalty of perjury, I declare that the foregoing statements and facts stated herein are true and correct to the best of my knowledge and belief.

Date: July 24, 2026                          Respectfully submitted,

_____

Joshua C. Harrison

9