# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | 4:26-md-03176-ALM<br>MDL 3176 |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>　　　Plaintiffs,<br><br>v.<br><br>AR-TT, LLC d/b/a TAKEDOWN TOOLS; CLAUSEN INC.; JONATHAN CLAUSEN, and JODI CLAUSEN,<br><br>　　　Defendants. | Civil Action No. 4:26-cv-00693-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>　　　Plaintiffs,<br><br>v.<br><br>CANUCK TACTICAL LLC, d/b/a RANGESPORT AMERICA LLC,<br><br>　　　Defendant. | Civil Action No. 4:26-cv-00705-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>　　　Plaintiffs,<br><br>v.<br><br>CLOAK INDUSTRIES, INC. and WILLIAM C. KING JR.,<br><br>　　　Defendants. | Civil Action No. 4:26-cv-00608-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>　　　Plaintiffs,<br><br>v.<br><br>DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW,<br><br>　　　Defendants. | Civil Action No. 4:26-cv-00377-ALM |

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

      Plaintiffs,

v.

HAWKPHIN SALES, LLC, d/b/a BATTLE-HAWK ARMORY/ BATTLE OPTICS/ BATTLE SHOP/ BATTLE SHOPS/ LAKEFRONT ARMORY, and ADAM GERLEMAN,

      Defendants.

Civil Action No. 4:26-cv-00707-ALM

---

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

      Plaintiffs,

v.

FIREARM SYSTEMS LLC d/b/a FIREARM SYSTEMS, BRANDON DONATTO, and MICHAEL STAKES,

      Defendants.

Civil Action No. 4:26-cv-00695-ALM

---

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

      Plaintiffs,

v.

OPTICS PLANET, INC., d/b/a ECENTRIA,

      Defendant.

Civil Action No. 4:26-cv-00521-ALM

---

ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas Corporation,

      Plaintiffs,

v.

PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company, and NICHOLAS NORTON,

      Defendants.

Civil Action No. 4:26-cv-00698-ALM

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas Corporation,<br><br>     Plaintiffs,<br><br>v.<br><br>SGC, LLC d/b/a SCOTTSDALE GUN CLUB, TERENCE D. SCHMIDT, and RONALD KENNEDY,<br><br>     Defendants. | Civil Action No. 4:26-cv-00694-ALM |
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas Corporation,<br><br>     Plaintiffs,<br><br>v.<br><br>TGR SERVICES, LLC, d/b/a MISSION RIDGE LLC & MISSION RIDGE RANGE & ACADEMY LLC, f/k/a TEXAS GUN RANGE OPERATORS LLC, and TGR VENTURES, LP,<br><br>     Defendants. | Civil Action No. 4:26-cv-00680-ALM |
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas Corporation,<br><br>     Plaintiffs,<br><br>v.<br><br>WEBCORP, INC. d/b/a TACTICAL SHIT/ LIBERAL TEARS/SIGGLOCKINCOLT.COM, and THOMAS KIRGIN, JR.,<br><br>     Defendants. | Civil Action No. 4:26-cv-00768-ALM |

**CERTAIN DEFENDANTS' SUR-REPLY TO PLAINTIFFS' SECOND
CONSOLIDATED MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     THIS COURT LACKS JURISDICTION OVER THE SECOND PI MOTION.................2

        A.      The Divestiture Doctrine Divests This Court of Jurisdiction Over the
                Second PI Motion. ................................................................................................2

        B.      Action On The Motion Would Upset The Status Quo Before The Federal
                Circuit. ................................................................................................................5

        C.      Plaintiffs' Remaining Arguments Do Not Restore Jurisdiction. ............................8

III.    THE SERIAL PI MOTION BAR FORECLOSES PLAINTIFFS' FOURTH BITE
        AT THE APPLE ..................................................................................................9

        A.      Courts Uniformly Prohibit Serial Requests for Extraordinary Relief......................9

        B.      This Is Rare Breed's Fourth Attempt.....................................................................10

        C.      The '403 Patent Does Not Make This Request New. ...........................................10

IV.     DISCOVERY AND PROCEDURAL PREREQUISITES MUST PRECEDE
        ANY MERITS ADJUDICATION...........................................................................11

        A.      Full Reciprocal Discovery Is Required Before Any Merits Briefing. ...................11

        B.      The Harrison Declaration Should Be Stricken or Disregarded............................12

        C.      Plaintiffs Retain Their Burden To Show Entitlement To Extraordinary
                Relief...................................................................................................................13

V.      CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABC IP, LLC v. Peak Tactical, LLC*,
No. 2:26-cv-00018, Dkt. No. 39, 2026 WL 713000 (D. Wyo. Feb. 13, 2026).........................4

*Birmingham Fire Fighters Ass'n 117 v. Jefferson County*,
290 F.3d 1250 (11th Cir. 2002) ...........................................................................9

*Chemlawn Servs. Corp. v. GNC Pumps, Inc.*,
823 F.2d 515 (Fed. Cir. 1987)..........................................................................3, 8

*Coastal Corp. v. Texas Eastern Corp.*,
869 F.2d 817 (5th Cir. 1989) ........................................................................5, 6, 7, 8

*De Beers Consolidated Mines v. United States*,
325 U.S. 212 (1945)........................................................................................11

*F.W. Kerr Chemical Co. v. Crandall Associates, Inc.*,
815 F.2d 426 (6th Cir. 1987) ...............................................................................9

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*,
2009 U.S. App. LEXIS 11701 (Fed. Cir. 2009) ....................................................3, 8

*Flores v. Sanders*,
No. 6:21-cv-00145-JDL, 2022 WL 18276842 (E.D. Tex. 2022) .............................11

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982).....................................................................................2, 6, 7, 8

*IBM Corp. v. Johnson*,
2009 U.S. Dist. LEXIS 66851 (S.D.N.Y. July 30, 2009) ..........................................9

*Ideal Toy Corp. v. Sayco Doll Corp.*,
302 F.2d 623 (2d Cir. 1962)...........................................................................5, 8

*In re Fort Worth Chamber of Commerce*,
100 F.4th 528 (5th Cir. 2024) ....................................................................... passim

*Khalil v. Trump*,
793 F. Supp. 3d 630 (D.N.J. 2025) .......................................................................9

*Providence Title Co. v. Truly Title, Inc.*,
No. 4:21-CV-147-SDJ, 2021 U.S. Dist. LEXIS 207781 (E.D. Tex. 2021).........................2, 8

*Quad Environmental Technologies Corp. v. Union Sanitary District*,
946 F.2d 870 (Fed. Cir. 1991)...........................................................................11

*SEC v. Young*,
    121 F.4th 70 (10th Cir. 2024) ........................................................................................9

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ......................................................................................9

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018) ...................................................................................11

*Taylor v. Sterrett*,
    640 F.2d 663 (5th Cir. 1981) ........................................................................................7

*TQP Development, LLC v. Wells Fargo & Co.*,
    No. 2:12-CV-61-JRG-RSP, 2013 WL 6247363 (E.D. Tex. 2013) ...........................13

## RULES AND REGULATIONS

Rule 62 .................................................................................................................................7

Rule 65 ......................................................................................................................... passim

## I.    INTRODUCTION

Plaintiffs have already sought the extraordinary relief of a TRO and preliminary injunction against the Disruptor product. Upon a full evidentiary hearing and a record of Plaintiffs' choosing, the district court in Wyoming denied injunctive relief with findings against Plaintiffs on all four Rule 65 factors. Plaintiffs then sought a do-over through expedited discovery to build a new preliminary injunction record, which the district court also considered and denied. They then appealed to the Federal Circuit, asking that court to reverse, and that appeal remains pending. Now they file yet another motion seeking the same injunction against the same Disruptor product, while simultaneously asking the appellate court to reverse the earlier denial of that very relief. Their Reply effectively concedes that, as to irreparable harm, equities, and public interest, this Motion is a rehash, just on a "fuller record." Dkt. No. 69 at p. 7. Disposition on a fuller record should come after discovery, on summary judgment or at trial. Plaintiffs took their shot on their terms, tried again, lost both times, and the Federal Circuit is now reviewing their loss on the exact same issues that Plaintiffs ask this Court to resolve. Plaintiffs do not explain how appellate jurisdiction and the bar against serial preliminary injunction motions permit another attempt to raise the same issues that are presently on appeal.

What Plaintiffs offer instead is a new expert declaration—submitted for the first time on Reply—and their argument that because Defendants [1] raised dispositive procedural bars to

---

[1] Defendants DNT LLC d/b/a Deez Nutz Tactical and Zach Morrow (collectively, "DNT") file this sur-reply in their individual case. Other defendants filed substantially identical sur-replies in their respective cases on August 3, 2026, including: AR-TT, LLC d/b/a Takedown Tools, Clausen Inc., Jonathan Clausen, Jodi Clausen; Canuck Tactical LLC d/b/a RangeSport America LLC; Cloak Industries, Inc., William C. King Jr.; Hawkphin Sales, LLC d/b/a BattleHawk Armory/Battle Optics/Battle Shop/Battle Shops/Lakefront Armory, Adam Gerleman; Firearm Systems LLC d/b/a Firearm Systems, Brandon Donatto, Michael Stakes; Optics Planet, Inc. d/b/a Ecentria; Peak Tactical, LLC, Nicholas Norton; SGC, LLC d/b/a Scottsdale Gun Club, Terence D. Schmidt, Ronald Kennedy; TGR Services, LLC d/b/a Mission Ridge LLC & Mission Ridge Range & Academy LLC, f/k/a Texas Gun Range Operators LLC, TGR Ventures, LP; Webcorp, Inc. d/b/a

Plaintiffs' motion, the Court should deem the substantive issues waived.  Neither gambit cures the threshold defects. This Court lacks jurisdiction over the Second PI Motion because a pending appeal has divested it of authority over the same product-specific preliminary relief now under appellate review. The serial-PI-motion bar independently forecloses a fourth bite at the same apple. Those gating issues should be resolved before permitting Plaintiffs to plunge the parties and the Court down the path of yet another emergency motion. And even if those bars could somehow be overcome, discovery must come before any merits adjudication. These are not minor procedural hurdles; they are matters of orderly justice and due process.

## II.     THIS COURT LACKS JURISDICTION OVER THE SECOND PI MOTION.

### A.     The Divestiture Doctrine Divests This Court of Jurisdiction Over the Second PI Motion.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). This rule is not discretionary. It reflects the foundational principle that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Id.*; *see also Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2021 U.S. Dist. LEXIS 207781, at *7-9 (E.D. Tex. 2021) ("The Fifth Circuit thus concluded, consistent with the decisions of several other circuits, that the 'powers' of a district court regarding an injunction pending appeal are 'limited to maintaining the status quo' and 'ought not to extend to the point that the district court can divest the court of appeals from jurisdiction' while the issue is on appeal.").

---

Tactical Shit/Liberal Tears/Sigglockincolt.com, and Thomas Kirgin, Jr. (all collectively, "Defendants").

The doctrine applies with particular force to interlocutory injunction appeals. The Federal Circuit has held that "on interlocutory orders, a notice of appeal divests the District Court of jurisdiction over all matters involved in the appeal" and "the District Court may proceed *only* with matters not involved with the appeal." *Chemlawn Servs. Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 518 (Fed. Cir. 1987) (emphasis in original). A district court "may not proceed with matters involved with the injunction itself, e.g., it may not amend the injunction . . . or make findings to support its injunction while the injunction is on appeal." *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.* 2009 U.S. App. LEXIS 11701, at *2-3 (Fed. Cir. 2009).

Rare Breed asks the Court to defy this rule. Its opening appellate brief and its Second PI Motion ask different courts to decide the same questions, against the same product, and issue the same injunction. The overlap is not partial, it is overwhelming. A preliminary injunction ruling under Rule 65 requires the court to evaluate four factors: (1) likelihood of success on the merits, (2) irreparable harm, (3) balance of equities, and (4) public interest. The Second PI Motion and the pending appeal share the same analysis on factors (2), (3), and (4) without any material difference—the irreparable harm theory is identical (price erosion, market displacement, reputational injury from the same Disruptor at the same discount to the same FRT-15L3); the balance of equities dispute is identical (same parties, same product); and the public interest arguments are identical (same competitive landscape). As to factor (1), the only claimed distinction is that likelihood of success now turns on the '403 Patent rather than the '223, '003, '336, or '807 Patents. But even here, the overlap is substantial: the accused product is the same, the claim construction disputes involve the same specification, and the invalidity defense rests on much the same prior art.

The one sliver of non-overlap—the infringement analysis under the '403 Patent's claims specifically—does not change the "nature" or "aspect" of the case before the Federal Circuit. *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 536 (5th Cir. 2024). Aside from the overlap in all other issues in Plaintiffs' serial PI attempts, the asserted claims of the '403 Patent are "not patentably distinct" from the claims asserted in the prior PI attempts. They cover substantially the same firearm trigger mechanism with substantially the same elements, which required Plaintiffs to submit a terminal disclaimer to get the '403 Patent claims issued. And Rare Breed itself told this Court that the '403 Patent "covers the same Accused Product and underlying technology already at issue in this case." Dkt. No. 41 at 3. Swapping the prior patent claims for new claims that have no patentable distinction, while regurgitating the remainder of Plaintiffs' Rule 65 arguments, does not change the aspect or nature of Plaintiffs' PI attempts.

The invalidity issues are likewise subsumed. The Wyoming court found a "substantial question of validity" in the earlier patents based on prior art—the same '067 Patent and TacCon 3MR that are equally relevant to the '403 Patent, whose claims the USPTO itself equated to those parent claims. *ABC IP, LLC v. Peak Tactical, LLC*, No. 2:26-cv-00018, Dkt. No. 39 (D. Wyo.).[2] Because the '403 Patent claims are "not patentably distinct," any invalidity showing against the parents applies with equal force to the '403 Patent; the Federal Circuit's resolution of the validity dispute will necessarily inform—if not control—the validity of the '403 Patent claims. If the Federal Circuit affirms the substantial-question-of-invalidity finding, it bears directly on the '403

---

[2] Plaintiffs repeatedly excerpt testimony from the first preliminary injunction hearing to argue that the Disruptor copies their product. (*E.g.,* Dkt. No. 69 at 12.) But they omit that the Disruptor practices the senior '067 Patent and was developed from the TacCon 3MR that predates Rare Breed's trigger by several years. For these reasons, the district court was not persuaded by the "copy" argument.

4

Patent; if it reverses, this Court will have appellate guidance before proceeding. Either way, that issue is intertwined between the appeal and the Second PI Motion.

Plaintiffs' final argument is that divestiture "does not turn on whether this Motion and the appeal share issues" but only on whether the '403 Patent is literally one of "those aspects of the case involved in the appeal." Dkt. No. 69 at 7. But *Fort Worth Chamber* definitively rejects Plaintiffs' formalism: scope depends on "the nature of the appeal," not on whether a specific patent number appears in the appellate briefs. *See* 100 F.4th at 536. Plaintiffs' reading would allow any patentee to evade divestiture simply by asserting a different patent within the same family and seeking the identical injunction against the same product—keeping the irreparable harm, equities, and public interest theories entirely untouched while changing only the patent number for the infringement prong. The doctrine cannot be so easily circumvented. Divestiture exists precisely to prevent a district court from altering the status of the case as it rests before the appellate court, and that is exactly what Plaintiffs ask this Court to do. *Id.* at 538.

### B.      Action On The Motion Would Upset The Status Quo Before The Federal Circuit.

The Fifth Circuit's decision in *Coastal Corp. v. Texas Eastern Corp.* is controlling. *Coastal* held that "the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is before us on appeal." 869 F.2d 817, 820 (5th Cir. 1989). Adopting the *Sayco* doctrine, the court held that a district court lacks jurisdiction "to tamper in any way with the order then on interlocutory appeal other than to issue orders designed to preserve the status quo of the case as it sat before the court of appeals." *Id.* (quoting *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623 (2d Cir. 1962)).

5

Most recently, the Fifth Circuit reaffirmed and extended these principles in *Fort Worth Chamber*, holding that "how broadly the aspects on appeal are defined depends on the nature of the appeal" and that a district court "does not have the power to alter the status of the case as it rests before the Court of Appeals." 100 F.4th at 536.

Applying these principles here, the result is straightforward. The "nature" of Rare Breed's pending Federal Circuit appeal is a request to reverse the denial of preliminary injunctive relief against the Disruptor product. *ABC IP, LLC v. Peak Tactical, LLC*, No. 26-1527, Dkt. No. 26. (Fed. Cir.). The Second PI Motion asks this Court to grant that same relief—an injunction against the Disruptor—while the Federal Circuit simultaneously reviews whether that very injunction should have been granted. The status quo before the appellate court is a denied injunction and continuing Disruptor sales. Granting it here obliterates that status quo, "divest[ing] the court of appeals from jurisdiction while the issue is before" it. *Coastal*, 869 F.2d at 820. This is precisely the simultaneous exercise of jurisdiction that the law forbids.

In response, Plaintiffs merely argue the '403 Patent "did not exist when Rare Breed noticed th[e] appeal" and "appears in neither party's Federal Circuit brief." Dkt. No. 69 at 5. But divestiture turns on whether the district court action involves "those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. And *Fort Worth Chamber* makes clear that scope "depends on the nature of the appeal"—not its formal subject matter. 100 F.4th at 536. The "nature" of the pending appeal is whether the Disruptor should be preliminarily enjoined based on Plaintiffs' claims of patent infringement, irreparable harm, balancing of equities, and the public interest. The Second PI Motion is co-extensive with that "nature": it seeks to enjoin the same Disruptor product, based on the same infringement theory, the same irreparable harm theories (price erosion, market displacement, reputational injury, collectability), the same balance-of-hardships framework, and

6

the same public interest argument. A new continuation patent—whose claims are "not patentably distinct" from the patents on appeal—changes only the caption of the infringement inquiry; it does not change the "nature or aspect" of the dispute from what the Federal Circuit is already deciding.

The policy logic underlying divestiture confirms this reading. The rule exists to prevent simultaneous exercise of jurisdiction that produces conflicting results—one court granting what another denies—and to protect the appellate court's ability to resolve the matter before it. *Griggs*, 459 U.S. at 58. If a party could evade divestiture merely by swapping one continuation patent for another within the same family, while recycling every other element of the preliminary injunction analysis, the doctrine would be a dead letter in patent cases. Any patentee with a continuation application pending could manufacture a "new" injunction request without end, defeating the appellate court's jurisdiction every time it accepted review of a preliminary-injunction denial. That absurd result flies in the face of *Griggs*, *Coastal*, and *Fort Worth Chamber*.

Plaintiffs next invoke Rule 62(d) and *Taylor v. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. 1981), arguing that when an appeal "refuses . . . an injunction," the district court "may . . . grant an injunction." Dkt. No. 69 at 5. But *Coastal* and its more recent progeny specifically addressed Rule 62(d)—in its pre-2018 form when it appeared in subsection (c)—and construed the district court's residual authority narrowly. The court held that the rule "authorizes the suspension, modification, restoration or grant of injunction, not the dissolution of an injunction already granted" and that "the district court's power does not extend so far" as to "oust the appellate court's jurisdiction." 869 F.2d at 819-20. *Coastal* further clarifies that the district court's residual authority is only the authority to *preserve*—not materially alter—the status quo. *Id.* at 820. Plaintiffs' reading of Rule 62(d) would let a district court grant the very relief whose denial is being reviewed simply by swapping a new continuation patent into the same arguments and theories for injunctive

7

relief. That reading eviscerates the divestiture doctrine and cannot be reconciled with *Coastal*'s holding.

Nor does Plaintiffs' assertion that there is "no injunction to maintain and no order on the '403 Patent to disturb" (Dkt. No. 69 at 6) withstand analysis. Under the *Sayco* doctrine, the "status quo" is "the status quo of the case as it [sits] before the court of appeals." *Coastal*, 869 F.2d at 820. Here, that status quo is the *denial* of a Disruptor injunction, now under appellate review. Granting an injunction against the same product destroys the status quo and renders the Federal Circuit's review meaningless. The District Court lacks jurisdiction over the Second PI Motion.

### C.    Plaintiffs' Remaining Arguments Do Not Restore Jurisdiction.

Plaintiffs argue that Defendant Peak Tactical's own post-appeal conduct—filing an answer and counterclaims twelve days after the appeal—proves this Court retains jurisdiction over the Second PI Motion. Dkt. No. 69 at 6 ("A party that is itself litigating the appealed patents in the district court cannot maintain that the appeal strips that same court of jurisdiction over a different patent."). But the *Fairchild* court drew precisely this line: "Although a district court may not proceed with matters involved with the injunction itself . . . the district court may proceed with the litigation and permit discovery, enter rulings on summary judgment, or hold a trial on the merits." 2009 U.S. App. LEXIS 11701, at *2-3. Filing an answer and asserting declaratory judgment counterclaims are routine litigation tasks, not matters involved with the injunction. In contrast, filing a Second PI Motion seeking to enjoin the same product under appellate review is a matter involved with the injunction itself. The distinction could not be clearer, and Plaintiffs' attempt to conflate the two categories finds no support in the case law.

Additionally, Plaintiffs' Reply does not explain how granting a Disruptor injunction "maintain[s] the status quo" when the status quo is a denied Disruptor injunction and continued sales of the same. *Griggs*, *Coastal*, *Chemlawn*, *Fairchild*, *Fort Worth Chamber*, and *Providence*

8

*Title* all point in the same direction. Plaintiffs' decision to seek appellate review has divested this Court of jurisdiction to consider preliminary injunction relief over the same product, theories, and Rule 65 factors. The Second PI Motion should be summarily denied on this ground alone.

### III.    THE SERIAL PI MOTION BAR FORECLOSES PLAINTIFFS' FOURTH BITE AT THE APPLE

#### A.    Courts Uniformly Prohibit Serial Requests for Extraordinary Relief.

The serial-PI-motion bar asks a straightforward question: is the movant seeking essentially the same thing it sought before? "Successive applications for what is essentially the same thing— that is not generally how litigation works. . . . [A]bsent exceptional circumstances, parties that lose motions . . . are not permitted to go back and try again. . . . These are the basic rules of the road for all sorts of filings. These rules are widely understood. And they are so rarely breached that they can seem invisible." *Khalil v. Trump*, 793 F. Supp. 3d 630, 633 (D.N.J. 2025). Critically, "the source of the Time 3 emergency cannot be that the preliminary injunction applicant lost at Time 2 and therefore still seeks the remedy he failed to get before, at Time 1. If that were a possible argument, there would be little left of the bar on filing second-bite-at-the-apple preliminary injunction motions." *Id.* at 633 n.6. The policy is clear: "Allowing only one try at a motion helps non-moving parties . . . from being swamped by over-and-over again filings that veer close to being reruns. And allowing only one try forces the parties and their lawyers to muster their best arguments the first time around, because they know there will likely be no second chance." *Id.* at 635.

Courts throughout the country are in accord. Parties may not "harass their adversaries and the courts with a barrage of successive motions for extraordinary, preliminary injunctive relief.'" *F.W. Kerr Chemical Co. v. Crandall Associates, Inc.*, 815 F.2d 426, 428-29 (6th Cir. 1987). Indeed, the law instructs that second PI motions, like the one at issue here, fail because the movant

9

cannot litigate through "piecemeal, seriatim motions requesting the same relief that has already been denied, especially when the information that is the basis for the successive motion was in [the movant's] possession at the time of the filing of its first motion for preliminary injunction." *IBM Corp. v. Johnson*, 2009 U.S. Dist. LEXIS 66851, at \*7-9 (S.D.N.Y. July 30, 2009); *see also Birmingham Fire Fighters Ass'n 117 v. Jefferson County*, 290 F.3d 1250, 1254-55 (11th Cir. 2002); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419-20 (9th Cir. 1984); *SEC v. Young*, 121 F.4th 70, 78 (10th Cir. 2024). Plaintiffs have raised no substantive basis— nothing other than the issuance of the indistinct '403 Patent—they could not have raised in their preceding attempts at preliminary injunctive relief.

### B.    This Is Rare Breed's Fourth Attempt.

Notwithstanding the clear record of Plaintiffs' four attempts to obtain preliminary injunctive relief, Plaintiffs argue the pre-transfer motion for expedited discovery was "not a request for injunctive relief." Dkt. No. 69 at 8. But Rare Breed filed that motion for the stated purpose of "a renewed preliminary injunction motion," effectively seeking reconsideration of the district court's denial of injunctive relief—and the Wyoming court recognized this and denied the do-over.

Plaintiffs also argue the appeal is "the ordinary means of reviewing the first denial." *Id.* True—and a party that has invoked that appellate review cannot simultaneously pursue the same relief in the lower court. Plaintiffs cannot escape the reality that in the pending Federal Circuit appeal, they are seeking injunctive relief against the Disruptor. *ABC IP, LLC v. Peak Tactical, LLC*, No. 26-1527, Dkt. No. 26. (Fed. Cir.). That both doctrines converge—divestiture **and** serial-PI bar—confirms that this fourth motion is improper, not that one doctrine cancels the other.

### C.    The '403 Patent Does Not Make This Request New.

Plaintiffs allege that the '403 Patent covers the same Disruptor product and the same underlying technology. The USPTO found its claims "not patentably distinct" from the parent

claims, and Plaintiffs resolved this double-patenting rejection by filing a terminal disclaimer. The Federal Circuit has recognized that a terminal disclaimer is "very relevant" and constitutes a "strong clue" that claims do not materially differ in scope from parent claims. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167-68 (Fed. Cir. 2018) ("Thus, a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent."). While Plaintiffs invoke *Quad Environmental Technologies Corp. v. Union Sanitary District*, 946 F.2d 870, 874 (Fed. Cir. 1991), for the proposition that a disclaimer is "not an admission," the more recent *SimpleAir* decision makes clear it is "very relevant" evidence of non-distinction.

Moreover, the '403 Patent is not even properly in this case as it is not alleged in the operative complaint. Dkt. No. 25. Plaintiffs' motion for leave to amend (Dkt. No. 41) remains pending, and DNT, along with multiple other Defendants, have opposed its addition. Dkt. No. 54. A preliminary injunction must be "intermediate relief of the same character as that which may be granted finally" and cannot reach "a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945). Courts in this District hold that "a request for a preliminary injunction must be based on allegations related to the claims in the complaint." *Flores v. Sanders*, No. 6:21-cv-00145-JDL, 2022 WL 18276842, at *2 (E.D. Tex. 2022).

Because the '403 Patent, which is not presently in the case, does not make Plaintiffs' fourth request new, Plaintiffs' Second PI Motion should be denied for what it is—a serial preliminary injunction request.

## IV.    DISCOVERY AND PROCEDURAL PREREQUISITES MUST PRECEDE ANY MERITS ADJUDICATION

### A.    Full Reciprocal Discovery Is Required Before Any Merits Briefing.

11

If this Second PI Motion proceeds, DNT and the other Defendants should receive full, reciprocal discovery before merits briefing. Plaintiffs' own conduct proves the point. When Defendant Norton moved to dismiss for lack of personal jurisdiction in Wyoming, Plaintiffs asked to stay their response until jurisdictional discovery was completed, arguing that the outcome of discovery directly affects the scope of their response. *Peak Tactical, LLC*, No. 2:26-cv-00018, Dkt. Nos. 54, 55. What was good enough for Plaintiffs then must be good enough for Defendants now. If Plaintiffs needed discovery to respond to a motion to dismiss, Defendants certainly need discovery to respond to a motion that threatens their business.

Plaintiffs' Reply asserts that Defendants do not need discovery because "Defendants hold the information they need to respond to the motion." Dkt. No. 69 at 11. But Defendants clearly are not in possession of any of the facts or evidence asserted by Plaintiffs in their declarations submitted in support of their motion. Defendants are not required to accept at face value and without challenge all of Plaintiffs' factual assertions regarding Plaintiffs' sales, pricing, market position, competitive landscape, balance of hardships, and other factual issues relevant to the Rule 65 analysis. A preliminary injunction opposition must respond to the record that will actually be before the Court, not one the movant builds piecemeal through reply-stage submissions.

### B.    The Harrison Declaration Should Be Stricken or Disregarded.

Dr. Joshua Harrison's declaration (Dkt. No. 69-1) was submitted for the *first* time with Plaintiffs' Reply—not with the opening Motion. It provides the first claim-by-claim comparison of the '403 Patent claims to the related patents, the first expert opinion that the invalidity analysis regarding Plaintiffs' first three bites does not carry over, and the first expert explanation of the terminal disclaimer significance. It expressly reviewed Defendants' Opposition and responds to it. This is not rebuttal. It fills the evidentiary gap Defendants identified—it attempts to carry Plaintiffs' *affirmative opening burden* on likelihood of success.

12

Plaintiffs' tactic has already been rejected in this District. In *TQP Development, LLC v. Wells Fargo & Co.*, the plaintiff waited until its reply brief to identify an expert and submit his declaration, then argued that the declaration was necessary to rebut matters raised in the opposition. The court rejected that argument and struck the declaration, explaining that a "'wait-and-see' approach to preparing an expert declaration is prohibited." No. 2:12-CV-61-JRG-RSP, 2013 WL 6247363, *13 (E.D. Tex. 2013). Plaintiffs likewise could not withhold Harrison's opinions supporting their prima facie case until after Defendants identified the defects in their opening presentation.

**C.     Plaintiffs Retain Their Burden To Show Entitlement To Extraordinary Relief.**

Plaintiffs' "unrebutted record" refrain (Dkt. No. 69 at 1, 12-14) is an improper attempt to shift their burden and sidestep the dispositive procedural bars discussed above. These procedural bars, if sustained, would moot the need for merits briefing entirely. Defendants asked Plaintiffs for leave to file a merits opposition only after the Court resolved threshold issues and after reciprocal discovery was complete. Plaintiffs refused, forcing Defendants to respond to the Second PI Motion before any discovery. The Court should first determine whether the Second PI Motion is procedurally proper in light of the pending Federal Circuit appeal and Plaintiffs' serial requests for identical preliminary relief. Only if those threshold issues are resolved in Plaintiffs' favor should the issues of expedited discovery and merits briefing proceed.

**V.     CONCLUSION**

For the foregoing reasons, DNT respectfully requests that the Court deny Rare Breed's Second PI Motion or, at the very least, hold Plaintiffs' Second PI Motion in abeyance until it has resolved the threshold issues regarding its jurisdiction over this successive request to enjoin Disruptor sales.

Dated: August 13, 2026

Respectfully submitted,

EMERSON, THOMSON & BENNETT, LLC
*/s/ Sergey Vernyuk*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile

*Attorneys for Defendants DNT LLC and Zach Morrow*

14