[redacted]

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Z3 PRODUCTIONS, LLC, d/b/a Z3PRO,<br><br>Defendant. | Civil Action No. 4:26-cv-00367-ALM |

[redacted]

**DECLARATION OF ARI BYTYQI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTION FOR PRELIMINARY INJUNCTION**

I, Ari Bytyqi, declare as follows:

1. My name is Ari Bytyqi. I direct and run Z3 Productions, LLC, d/b/a Z3Pro ("Z3"). I submit this declaration in support of Defendants' Opposition to Plaintiffs' Consolidated Motion for Preliminary Injunction. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently to them.

2. Z3 is a Oklahoma limited liability company formed on January 9th of 2025.

3. Z3 is, in substance, a one-person operation. I personally perform substantially all of the business's functions, including product sourcing and preparation, listings, order fulfillment, customer service, and recordkeeping. Z3 has no employees other than me.

4. Z3 sells Super Safety products and parts under its Z3Pro brand, including kits with trigger-cutting jigs.

5. The products are modular: they supply certain components (such as the cam, lever, and a pre-cut or customer-cut trigger), and the customer supplies or reuses the remaining standard fire-control parts and performs the installation.

6. Based on my experience selling to customers of forced reset trigger ("FRT") products, customers commonly switch between FRT products for many reasons, including product failures; preferences in trigger feel, shape, and look; functionality differences; curiosity; and spur-of-the-moment purchasing. The firearms-accessories market has many customers with varied and changing preferences, wants, and needs, and customers sometimes change out a product merely out of curiosity or to try something new.

7. Switching costs for users are insignificant. A customer who installs one FRT product is not wedded to that platform or style; the customer can readily remove it and install a different product, reusing standard fire-control components.

8. Z3's customers are generally do-it-yourself ("DIY") firearm enthusiasts and hobbyists who affirmatively want lower-priced, modular components that they can install, uninstall, reinstall, service, and combine with other parts of their choosing, including third-party triggers.

9. In my experience, Z3's customers understand that its prices are lower than Rare Breed's prices in significant part because the products are modular and install-it-yourself: the customer supplies or reuses several standard fire-control components and performs the installation, rather than buying a complete, closed drop-in assembly at a premium price.

10. The modularity is itself a selling point. Customers can later switch or upgrade trigger assemblies—for example, to a higher-end trigger or simply a different style of

trigger—without replacing an entire drop-in unit. In my experience, this is a strong selling point and an advantage over Rare Breed's closed, drop-in products.

11. Repeat purchasing is common. Customers purchase additional or different FRT products for additional rifles, purchase replacement or upgrade components, and try different products over time.

12. I have seen a growing number of customers who want two-stage triggers, or who at least want the option to install one. The modular products Z3 sells are compatible with two-stage triggers. I understand that Rare Breed's single-stage FRT-15L3 does not offer that option.

13. The Super Safety replaces the rifle's standard safety selector with a push-button cam—a visibly and functionally different user interface from a standard selector and from Rare Breed's drop-in units. In my experience, a reasonably knowledgeable customer recognizes this difference when making the purchasing decision, and the difference is immediately apparent once the product is installed, so the customer would not be confused about whose product is installed.

14. Z3 has never sold any products to East Valley Tactical.

15. Z3 continues to sell its products in the ordinary course of business.

16. Z3 has not asked or required any dealer or customer to make product-specific investments in training, compliance processes, or inventory, and I am not aware of any dealer or customer that has declined to purchase or carry Rare Breed products because of Z3.

17. I have invested substantial personal time and money in developing and commercializing Z3's products and business, including website design, navigating high-risk payment processing, marketing, and product research and development. I have been involved in

every step of development of products for Z3's catalog, including various products for HK and HK style weapons systems, night vision systems, and specific changes to the Super Safety platform to minimize difficulties in the manufacturing process.

18. Z3 is a non-diversified business. The accused products and related or similar firearm mechanisms are the core of its operations and account for substantially all of its revenue. Z3 has no other product line that could meaningfully replace those sales.

19. The investments described above are largely sunk. They could not be recovered if Z3 were enjoined, and the inventory Z3 holds would be stranded.

20. Z3's total revenue from the accused product categories over the trailing twelve months is [redacted]. Based on my knowledge of Z3's finances, Z3 could pay a judgment based on a reasonable royalty in the range of 5% to 8% of its accused sales.

21. Because Z3 is a one-person business, the requested preliminary injunction would not merely restrict a product line—it would effectively shut down the business and eliminate my livelihood. It would strand inventory, destroy the goodwill and customer relationships I have built, disrupt Z3's suppliers, and destroy the value of my sunk investments—all before any determination on the merits of Plaintiffs' claims, which Z3 disputes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 8/12, 2026.

ARI BYTYQI
Ari Bytyqi